IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DEANA M.,**[1] <br><br> Plaintiff, <br><br> v. <br><br> **NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, <br><br> Defendant. | Case No. 3:17-cv-1068-SI <br><br> **OPINION AND ORDER** |

Lisa R.J. Porter, 5200 S.W. Meadows Rd. Suite 150, Lake Oswego, OR 97035. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Sarah Moum, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

Deana M. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff filed an application for DIB on September 7, 2013, alleging disability beginning on February 1, 2013. AR 24. She filed an application for SSI on October 2, 2013, also alleging disability beginning on February 1, 2013. She was born on October 18, 1962, and she was 51 years old as of the alleged disability onset date. She alleged disability due to arthritis, diabetes, kidney stones, restless leg syndrome, leg cramps, feet cramps, right shoulder pain, knee pain, back pain, and joint swelling. AR 171. The Commissioner denied her application initially and upon reconsideration. AR 24. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* The ALJ found Plaintiff not disabled from February 1, 2013 through the date of the decision, January 6, 2016. *Id.* The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1. Plaintiff seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each

step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ began her written decision by noting that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015. AR 26. Accordingly, for her DIB claim, Plaintiff must prove disability on or before that date. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, osteoarthritis of the left acromioclavicular joint with a low-grade partial thickness tear involving the supraspinatus/infraspinatus/subscapularis tendons, pseudogout in the left ankle, degenerative disc disease of the cervical spine, and peripheral neuropathy. *Id.* At step three, the ALJ found

that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. AR 29. The ALJ then determined that Plaintiff had the RFC to perform light work, with the additional restrictions that Plaintiff could not climb ladders, ropes, or scaffolds, or be exposed to hazards, vibration, or extreme cold. AR 29.

At step four, the ALJ determined that Plaintiff was able to perform her past relevant work as a merchandise manager because it did not require the work-related activities precluded by Plaintiff's RFC. Alternatively, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 34-35. Thus, the ALJ concluded that Plaintiff was not disabled from February 1, 2013, through the date of the decision, January 6, 2016. AR 35.

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ that Plaintiff was not disabled. She argues that the ALJ erred in making that determination by: (A) failing to provide clear and convincing reasons to discount Plaintiff's subjective symptoms; (B) improperly weighing the medical opinions of the treating physician and the examining physician; (C) improperly discounting lay witness testimony; and (D) failing to incorporate all evidence into Plaintiff's RFC.

### A. Plaintiff's Subjective Symptoms

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other

PAGE 6 – OPINION AND ORDER

symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff testified at the hearing that she could not work because of her: (1) tears in her shoulder; (2) diabetes that caused severe neuropathy and prevented her from wearing shoes; (3) dysfunctional nerves in her hands that prevented her from using a computer or writing for

long periods of time; (4) inability to sit for long periods of time; (5) kidney stones; and (6) depression. AR 43-81. Moreover, in her function report, she testified that she could not work because of her: (1) frequent headaches and shortness of breath; (2) difficulty concentrating; (3) difficulty handling stress; and (4) blurred vision caused by her medication. AR 178-85.

The ALJ, applying the first step of the credibility framework, found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 33. In applying the second step, however, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Id.* In support of that finding, the ALJ offered three reasons: (1) the disparity between Plaintiff's statements and the objective evidence; (2) the disparity between Plaintiff's statements and her activities of daily living; and (3) Plaintiff's conservative treatment.

### 1. Objective Evidence

The ALJ found that the objective evidence was inconsistent with Plaintiff's testimony about her (a) lifting limitations; (b) shoulder pain; and (c) diabetes. An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883.

#### a. Lifting Limitations

The ALJ found that the objective evidence was inconsistent with Plaintiff's testimony that she could not lift more than eight pounds. AR 30. Her physical therapist implied that she was able to lift 25 pounds when he noted that she was "having difficulty lifting more than 25 pounds." AR 566. Plaintiff argues that "[t]he ALJ points only to one instance" where Plaintiff

was able to lift 25 pounds. In later physical therapy appointments, however, Plaintiff was still able to lift heavy objects. *See, e.g.*, AR 574. Thus, Plaintiff's claim that she could not lift more than eight pounds was inconsistent with the objective evidence.

        **b. Shoulder Pain**

The ALJ found that Plaintiff's "progress in therapy[] suggests that [her] symptoms regarding her shoulder are not as severe as alleged." *See* AR 31. Plaintiff argues that she had severe shoulder pain in September, 2015. She points out that, in her September physical therapy appointment, her physical therapist reported that reaching around her back was the "worst." *See* AR 582. In context, however, that statement only indicated that Plaintiff had more difficulty reaching behind her back than she did with other exercises. *Id.* The physical therapist's notes from the September visit generally suggested that Plaintiff's shoulder limitations had continued to improve since the July visit. *See* AR 567. For example, her ability to complete regular activities had improved by 30 percent. AR 582. Although her shoulders were sore during the September visit, the soreness was "due to taking care of camping equipment." *Id.*

The ALJ, however, erred in finding that the objective medical evidence was inconsistent with Plaintiff's statement that steroid injections into her shoulder only relieved her shoulder pain for a short period of time. AR 31, 59. As the ALJ pointed out, Dr. Chesnutt reported that the shoulder injection "was good," indicating that it was relieving Plaintiff's shoulder pain, two weeks after the injection. AR 31, 509. The fact that the injection was providing relief two weeks after it was implemented, however, does not contradict Plaintiff's statement that the relief did not last long. Moreover, her physical therapist later noted that the injection only relieved Plaintiff's shoulder pain for two weeks. AR 523. Further, Plaintiff's doctor referred her to a surgeon because the injections only worked for a short period of time. AR 513.

PAGE 9 – OPINION AND ORDER

Although Plaintiff testified that her shoulder injections may have lasted only a week (AR 59), Plaintiff did not recall exactly how long the shoulder injections relieved her pain. The medical evidence indicates that shoulder injections may have relieved Plaintiff's pain for two weeks rather than one week. Nevertheless, the medical evidence still corroborates the gist of Plaintiff's testimony that the shoulder injections only relieved her shoulder pain for a short period of time.

The ALJ also concluded that "Plaintiff previously had an injection that appears to have provided relief because she did not return with complaints of further pain." AR 31. Plaintiff, however, did return to Dr. Chesnutt in January 2015, and she complained about her persisting shoulder pain. AR 513. During that visit, Dr. Chesnutt noted that Plaintiff's lifting limitation was less than ten pounds, she experienced shoulder pain at night, and she had limited range of motion. *Id.* Moreover, Dr. Chesnutt referred her to a surgeon and a physical therapist during that visit. *Id.* Thus, the ALJ erred in determining that the objective medical evidence was inconsistent with Plaintiff's statement that steroid injections into her shoulder only relieved her shoulder pain for a short period of time.

These errors, however, are harmless. Overall, there is substantial evidence in the record supporting the ALJ's conclusion that the objective medical record did not support the subjective limitations described by Plaintiff. This includes the evidence regarding the effectiveness of physical therapy in alleviating Plaintiff's shoulder symptoms.

### c. Diabetes

Next, the ALJ found that Plaintiff's testimony about the intensity, persistence, and limiting effects of her diabetes was inconsistent with the objective medical evidence. Plaintiff claimed that, because of her neuropathy, she was unable to wear shoes without excruciating pain. AR 55. Dr. Nicholas Branting, however, found that Plaintiff had a normal gait and had no

PAGE 10 – OPINION AND ORDER

limitation in walking. AR 31-32, 301-03. She was also able to remove her shoes without difficulty. AR 301-03. Plaintiff also claimed that she "cannot use [her] hands . . . for a long period of time because they go dead. The nerves in them just quit working." AR 55. She also claimed that she was incapable of "writing, drawing, or anything" for more than "five to ten minutes" because of swelling in her hands. AR 59. Dr. Branting, however, noted that Plaintiff had no signs of swelling in any extremities, that she had normal gross and fine motor skills in her hands, and that she had normal sensation to touch and pin pricks in all fingers. AR 301-03. For his functional capacity assessment, Dr. Branting assessed Plaintiff with no limitations on lifting, carrying, reaching, handling, or fingering. AR 303.

Plaintiff argues that the ALJ "cherry-picked specific incidences wherein Plaintiff demonstrated normal testing to demonstrate that her neuropathy is not severe." Plaintiff first points out that a few doctors noted that her feet were tender to touch. *Id.* The fact that her feet were tender, however, does not sufficiently support her statement that she was unable to wear shoes without excruciating pain. Plaintiff also notes that she was removed from a study because her average blood glucose levels were not adequately controlled. AR 563. The fact that her blood glucose levels were too high on one occasion, however, does not sufficiently support her statements about the limiting effects of her diabetes. The weight of the evidence suggests that, while Plaintiff's blood sugars were often above target levels, they could be adequately controlled with an appropriate diet. *See, e.g.*, AR 580-81.

Considering the entire medical record, including the specific examples provided by the ALJ, substantial evidence supports the ALJ's conclusion that the objective medical evidence was inconsistent with Plaintiff's claimed limitations. Thus, this was a clear and convincing reason to

discount Plaintiff's subjective testimony and an appropriate factor for the ALJ to consider in weighing Plaintiff's subjective testimony.

### 2. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for

concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ found that "the claimant reported a robust slate of daily activities, including preparing meals, going for walks, enjoying hobbies of sewing, painting, and leatherwork, and performing household chores, such as doing the dishes." AR 32. Moreover, the ALJ noted that Plaintiff "flew to Arizona about a year ago and stayed for two months to help her father set up his house." *Id.* Plaintiff also used power tools and took care of camping equipment, although those activities did exacerbate her symptoms. AR 32. Furthermore, Plaintiff "likes to walk with her boyfriend, although she is not able to walk for long distances." AR 33. Finally, Plaintiff "has hobbies, including sewing, painting, fishing, and woodworking, that she is still able to do, but at a reduced rate." *Id.* The ALJ concluded that "it is the combination of the claimant's activities, and not any one activity in particular, that undermines the credibility of her statements regarding the severity of her symptoms." *Id.*

Plaintiff isolates a few specific examples provided by the ALJ as demonstrating that her daily living activities were not a clear and convincing reason to discount her credibility. She discusses her trip to Arizona, her limited camping, and her limited use of power tools. First, the Court notes that the ALJ looked at Plaintiff's activities as a whole and did not focus on individual activities. The Court agrees that the record as a whole supports that Plaintiff's activities of daily living were inconsistent with Plaintiff's alleged limitations, and thus the ALJ provided a clear and convincing reason to discount Plaintiff's subjective testimony.

Second, regarding the three examples challenged by Plaintiff, the Court disagrees that Plaintiff's trip to Arizona was not inconsistent with her alleged limitations. Plaintiff argues that the fact that she "was capable of sitting once in an airplane does not demonstrate that she would

be capable of sitting for extended periods of time on a continuous basis." Plaintiff's ability to sit on a plane for two hours, however, is inconsistent with her statement that she could only sit for "about 20 minutes" at a time. AR 62. Plaintiff also argues that her trip to Arizona was merely an isolated instance of improvement. Plaintiff, however, never indicated that her sitting pain was sporadic. Moreover, she likely would not have planned to travel to Arizona on a plane if she believed that, on any given day, she may be incapable of sitting for more than 20 minutes. Thus, the evidence supported the ALJ's finding that Plaintiff's plane travel was inconsistent with her statement that she was not capable of sitting for long periods of time.

The Court agrees with Plaintiff, however, that her camping and use of a power drill were not inconsistent with her testimony about her subjective symptoms. These were limited attempts to lead a normal life that exacerbated her symptoms. As noted above, however, the record as a whole supports the ALJ's ultimate determination.

### 3. Conservative Treatment

Routine, conservative treatment can be sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ noted that Plaintiff's shoulder pain likely was not as intense as she claimed because her "clinicians opted for conservative treatment measures and determined that surgery

was not indicated." AR 31. The ALJ erred in determining that Plaintiff's treatment for her shoulder pain was conservative. Dr. Chesnutt referred Plaintiff to a surgeon after Plaintiff's shoulder injections failed to relieve her pain for more than a short period of time. AR 513. Moreover, Plaintiff testified at the hearing that she was considering surgery. AR 58.

The ALJ's error, however, is harmless. The ALJ provided other clear and convincing reasons that the Court has upheld to discount the subjective limitations to which Plaintiff testified. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that the ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld).

## B. Weighing Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.* The opinion of an examining physician is

PAGE 15 – OPINION AND ORDER

substantial evidence to reject a treating physician's opinion when the examining physician provides "independent clinical findings that differ from the findings of treating physicians." *Orn*, 495 F.3d at 632.

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen*, 80 F.3d at 1286.

1. **Dr. Branting**

Dr. Branting, an examining physician, opined that Plaintiff was not disabled. He found that Plaintiff had (1) no limitation in standing or walking capacity; (2) no limitation in lifting or carrying capacity; (3) no limitation in climbing or balancing; and (4) no limitation in reaching, handling, fingering, or feeling. AR 304. The ALJ gave partial weight to Dr. Branting's opinion

PAGE 16 – OPINION AND ORDER

because objective medical evidence indicated that Plaintiff was "more limited" than Dr. Branting's assessment suggested. AR 33.

Plaintiff argues that the ALJ gave an unreasonable amount of weight to Dr. Branting's opinion because Dr. Branting had only limited information regarding Plaintiff's condition. Plaintiff notes that Dr. Branting did not review any records or test results to form his opinion. While it is true that Dr. Branting's opinion was based on limited information, Dr. Branting did perform an examination that included some objective tests, including flexion, extension, sensation, strength, and other general examination findings. Plaintiff also fails to explain how the ALJ placed an unreasonable weight on Dr. Branting's opinion. The Court finds that the ALJ properly discounted Dr. Branting's opinion by only according it partial weight.

**2. Dr. Shawn Blanchard**

Dr. Blanchard, a treating physician, opined that Plaintiff was unemployable, and thus disabled, because of the pain in her feet and the chronic pain in her back and shoulders. AR 597. Dr. Blanchard also stated that Plaintiff could only sit for 15 minutes at a time before she must change positions. AR 352. Furthermore, Dr. Blanchard believed that Plaintiff would be very limited in her ability to lift and carry items. AR 354. The ALJ provided little weight to the opinion because it was "inconsistent with contemporaneous treatment notes and conservative treatment modalities as well as the objective findings by consultative examiner Nicholas Branting." AR 33. Moreover, the ALJ provided little weight to Dr. Blanchard's opinion because it "appear[ed] to be largely based upon claimant's self-report of symptoms, which are not wholly credible." *Id.* Finally, the ALJ gave little weight to Dr. Blanchard's ultimate conclusion that Plaintiff is disabled because that decision is specifically reserved to the Commissioner. *Id.* (citing 20 CFR 404.1527(e)(1), 416.927(e)(2)).

Plaintiff argues that the ALJ erred by according too little weight to Dr. Blanchard's opinion. Plaintiff argues that Dr. Blanchard's opinion was not based on Plaintiff's self-report, but instead based on the fact that Plaintiff "objectively suffers from uncontrolled diabetes, a weight lifting limitation of ten pounds that required physical therapy, leg swelling, and kidney stones." *Id.* Plaintiff's argument fails because she does not indicate why she believes Dr. Blanchard's opinion was based on objective evidence. Dr. Blanchard's objective findings in the record do not substantially support his statements. *See, e.g.*, AR 350-54, 491, 531, 594-97. For example, in January 2015, Dr. Blanchard stated that Plaintiff had "no pedal edema" and that her diabetes mellitus was "stable." AR 531. Thus, the ALJ provided specific and legitimate reasons for according little weight to Dr. Blanchard's opinion.

## C. Lay Witness Testimony

Plaintiff next contends that the ALJ erred by discounting statements made by Plaintiff's friend Rudy Cousins. Mr. Cousins wrote a short letter stating that (1) Plaintiff has trouble controlling her blood sugar; (2) Plaintiff's legs cramp every day; (3) Mr. Cousins gives Plaintiff foot rubs to relieve her foot pain; and (4) Mr. Cousins helps Plaintiff with groceries because Plaintiff has tears in her shoulders and back problems. AR 217. The ALJ gave "some weight" to Mr. Cousins' statements. AR 33.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when

PAGE 18 – OPINION AND ORDER

rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ gave "some weight" to Mr. Cousins' statements because they were "not consistent with the medical evidence of record," and they were "inconsistent with the claimant's reported level of activity throughout the record." AR 34. The ALJ's reasons for discounting Mr. Cousins' statements were conclusory, and the ALJ erred in discounting that testimony. Mr. Cousins' statements were not inconsistent with objective medical evidence or Plaintiff's activities of daily living. The error, however, is harmless. Although the ALJ did not accord significant weight to Mr. Cousins' statements, the ALJ considered each of the limitations that Mr. Cousins discussed. After thoroughly discussing Plaintiff's diabetes, foot pain, foot swelling, and lifting limitations, the ALJ found that Plaintiff had severe diabetes, various severe shoulder

problems, and severe neuropathy. AR 26-32. Nevertheless, the ALJ found that Plaintiff was not disabled. Fully crediting Mr. Cousins' testimony would not affect that decision because Mr. Cousins' statements do not include any additional *functional* limitations not already considered by the ALJ.

**D. Incorporation of Evidence into RFC**

Plaintiff argues that the ALJ's assessment of her RFC was improper because the ALJ improperly discounted Plaintiff's subjective statements and lay witness testimony, and improperly weighed the medical opinions. For the reasons discussed above, the Court rejects Plaintiff's arguments.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 7th day of August, 2018.

>   */s/ Michael H. Simon*
>   Michael H. Simon
>   United States District Judge